**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

WOMEN'S CARE FLORIDA, LLC,

     Plaintiff,

v.                                                             Case No. 8:25-cv-3011-KKM-LSG

DEANNA CAMINITI,

     Defendant.

_____

### <ins>ORDER</ins>

Women's Care Florida, LLC, sues its former employee and physician Deanna Caminiti for breaching her employment agreement and for unjust enrichment. *See* Compl. (Doc. 1-1). Caminiti asserts counterclaims for sex discrimination, fraud, breach of the employment agreement, and violation of the Equal Pay Act. *See* Am. Countercls. (Doc. 20). Women's Care moves to dismiss Caminiti's counterclaims for failure to exhaust administrative remedies and failure to state a claim. *See* MTD (Doc. 25). Caminiti opposes. Resp. (Doc. 34). For the following reasons, I grant in part and deny in part Women's Care's motion.

## I.    BACKGROUND

Caminiti is a board-certified physician who has specialized in obstetrics and gynecology (OB/GYN) for roughly twenty years and maintained "a

successful and lucrative medical practice in the Greater Cincinnati/Northern Kentucky area." Am. Countercls. ¶ 1. In 2024, Women's Care recruited Caminiti to relocate her medical practice to Florida. *See id.* ¶ 4. In doing so, Women's Care "represented to Dr. Caminiti that [Women's Care] maintained a professional, fully trained, and competent administrative staff, support staff, and employees," and likewise "maintained the offices, staff, and resources needed for a fully functioning, professional medical office specializing in an OB/GYN practice, including patient records and monitoring, access to lab testing and timely results, and resources, practices, and procedures in the office." *Id.* ¶¶ 5–7. Women's Care told Caminiti that she "would be one of five physicians covering the [Women's Care] office at Lakewood Ranch." *Id.* ¶ 7.

Caminiti accepted Women's Care's employment offer and signed a "Physician Employment Agreement" in June 2024. Agreement (Doc. 20-1). Per the Agreement, Caminiti's five-year term of employment was to "commence on or about September 9, 2024," and she was to receive a one-time $100,000 incentive bonus. *Id.* at 2, 5, 13. According to Caminiti, however, Women's Care "was completely unprepared for [her] to commence her employment, and in fact, [Women's Care's] staff was completely unaware that Dr. Caminiti was commencing employment there at all," causing a several week delay in Caminiti's start date and causing her to lose thousands in income. Am. Countercls. ¶ 13.

Once Caminiti finally started her employment, she "discovered that [Women's Care] had lied to her about nearly all aspects of her employment and the office conditions, and that all of the factual representations made to her in the recruitment process were completely false." *Id.* ¶ 14. For example, the Lakewood Ranch office had only two other physicians, "presenting a serious and unacceptable risk to patients of the practice." *Id.* ¶ 15. Women's Care "had no after-hours communication services in place," and its "calendar and scheduling systems were a dangerous and incoherent mess." *Id.* ¶¶ 17–19. "Caminiti was repeatedly placed in a position where angry patients were waiting on lab results, which were unreasonably delayed and inconsistent," and "Caminiti discovered that [Women's Care] maintained an *unattended* web-based messaging system, through which [Women's Care] patients (including Dr. Caminiti's patients) submitted electronic communications to physicians, with no oversight, review, or response at all." *Id.* ¶¶ 20–23.

Caminiti alleges that she reported these issues to Women's Care and "demand[ed] that [Women's Care] remedy these practices and comply with the Agreement." *Id.* ¶ 24. "[Women's Care] dismissed all of these concerns as 'growing pains' for the office," and Caminiti's requested meetings with management were "canceled" or "ignored." *Id.* ¶¶ 24–26; *see id.* ¶ 26 ("Dr. Caminiti also reported these problems and breaches to [Women's Care's] Chief

3

of Staff Julia Jolley, both verbally and in writing, but the communications were ignored.").

Around the same time, Caminiti "learned that [Women's Care] was intentionally discriminating against herself and other female OB/GYN physicians in the practice" by paying two male physicians $60,000 more in annual salaries despite "significantly less experience and qualifications than Dr. Caminiti," in addition to providing the male physicians extra vacation, paid time off, and private office space. *Id.* ¶¶ 27–28. Women's Care "again ignored [Caminiti's] notices and requests" to discuss the apparent discrimination, leading Caminiti to contact the U.S. Equal Employment Opportunity Commission (EEOC) on December 3, 2024. *Id.* ¶¶ 30–31. Just over two weeks later, on December 18, Caminiti "resigned her employment and terminated the Employment Agreement for cause." *Id.* ¶ 32.

In September 2025, Women's Care sued Caminiti in state court for breach of contract and unjust enrichment, seeking repayment of Caminiti's incentive bonus and payment of Caminiti's "tail" insurance coverage, as provided for in the Agreement. *See generally* Compl. Caminiti timely removed the action to federal court and filed an answer and four counterclaims. *See* (Docs. 1, 6). Caminiti alleges sex discrimination in violation of Title VII and the Florida Civil Rights Act (FCRA) (Count I), fraud and misrepresentation (Count II), breach of contract (Count III), and violation of the Equal Pay Act,

29 U.S.C. § 206(d) (Count IV). *See* Am. Countercls. ¶¶ 39–70. Women's Care moves to dismiss each claim.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" under Rule 12(b)(6), a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint's factual allegations are accepted "as true" and construed "in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

## III.   ANALYSIS

Women's Care raises several arguments in support of dismissing Caminiti's four counterclaims. I address each in turn.[1]

### A. Count I: Sex Discrimination

In a single count,[2] Caminiti alleges that Women's Care unlawfully discriminated against her based on her sex in violation of both Title VII of the Civil Rights Act of 1964 and the FCRA. *See* Am. Countercls. ¶¶ 39–50. Women's Care first argues that the claims must be dismissed because Caminiti failed to exhaust administrative remedies, as required by each statute. *See* MTD at 5–8. And to the extent that Caminiti pursued the required administrative remedies, Women's Care maintains that Caminiti did so too late. *Id.* at 8–9. I largely agree, and more specifically conclude that Caminiti's FCRA claim is premature, while her Title VII claim is time barred. I dismiss

---

[1] At the outset, Women's Care avers that Caminiti filed a shotgun pleading because each count realleges previous facts. *See* MTD at 4–5. For reasons of judicial economy, I proceed to Women's Care's substantive arguments, which also suggest that—despite the pleading deficiency—Women's Care had "adequate notice of the claims against [it] and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015).

[2] Ordinarily, "[c]laims under the Florida Civil Rights Act and under Title VII are different claims and must be set forth in separate counts." *Widemond v. CoreCivic of Tennessee, LLC*, No. 3:25-CV-1033-MMH-LLL, 2025 WL 2710597, at *1 (M.D. Fla. Sept. 23, 2025). Because Women's Care does not raise this issue, I do not dismiss on this basis but treat Count I as containing two separate statutory claims.

each claim without considering Women's Care's alternative argument that Caminiti fails to sufficiently allege disparate treatment. *See id.* at 9.

"To bring suit for discrimination under the FCRA [or] Title VII," a "plaintiff first must exhaust administrative remedies. And to exhaust remedies, the plaintiff must file timely a discrimination charge with the appropriate commission," here either the EEOC or the Florida Commission on Human Relations (FCHR). *Poulsen v. Publix Super Markets, Inc.*, 302 F. App'x 906, 907 (11th Cir. 2008) (per curiam) (first citing *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001) (Title VII); and then citing *Woodham v. Blue Cross & Blue Shield of Fla., Inc.*, 829 So.2d 891, 894 (Fla. 2002) (FCRA)); *see Perry v. S. Wine & Spirits of Am., Inc.*, No. 8:10-cv-2876-T35-EAJ, 2012 WL 12897391, at *3 (M.D. Fla. Mar. 5, 2012) ("[T]he filing of a charge of discrimination with the [FCHR] constitutes dual filing with the EEOC."), *aff'd sub nom. Perry v. S. Wine Spirits*, 511 F. App'x 888 (11th Cir. 2013). A plaintiff must file a charge within 300 days of the last discriminatory act to be timely under Title VII, and within 365 days of the alleged violation under the FCRA. *See Poulsen*, 302 F. App'x at 907 n.2; § 760.11(1), Fla. Stat. Then, within 180 days of the filing, the FCHR "shall determine if there is reasonable cause to believe that discriminatory practice has occurred in violation of the [FCRA]." § 760.11(3), Fla. Stat. The plaintiff cannot file a lawsuit until the FCHR finds

7

reasonable cause or fails to render a determination within 180 days. *See id.* § 760.11(3)–(4), (8); *Woodham*, 829 So.2d at 897–98.

Here, the last possible date that discrimination occurred was December 18, 2024, the date of Caminiti's resignation. *See, e.g.*, *Alford v. Pasco-Pinellas Hillsborough Cmty. Health Sys., Inc.*, No. 8:25-cv-94-VMC-SPF, 2025 WL 3275946, at *7 (M.D. Fla. Nov. 25, 2025) (finding that the latest violation occurred when the plaintiff's employment ended and dismissing the complaint with prejudice for failure to exhaust administrative remedies); Am. Countercls. ¶ 32. On that timeline, Caminiti was required to file her Title VII charge by October 14, 2025, and her FCRA charge by December 18, 2025. Although Caminiti contacted the EEOC on December 3, 2024, she did not file a formal charge of discrimination until December 17, 2025, when she filed a complaint with the FCHR alleging sex discrimination. *Id.* ¶¶ 31, 37; (Doc. 20-3). Accordingly, Caminiti's Title VII claim is time barred. And while Caminiti timely filed her charge for FCRA purposes, she filed her charge less than 180 days ago, and she does not allege that the FCHR has issued a reasonable cause determination. Accordingly, her FCRA claim is premature and subject to dismissal.[3]

---

[3] Although Caminiti counters that "an action filed prematurely should be abated – not dismissed – until the cause of action accrues," Resp. at 9 (quoting *Thomas v. Suwannee Cnty*, 734 So. 2d 492, 497 (Fla. 1st DCA 1999)), that general rule applies only when prematurity is "curable simply by the passage of time," *Thomas*, 734 So.

Caminiti resists this conclusion, arguing that Women's Care waived any timeliness or exhaustion defense because it "preemptively filed this lawsuit," and further that the deadline should be equitably tolled because Women's Care "delayed in filing this lawsuit and then waited until the 300th day after the termination of Dr. Caminiti's employment to serve the complaint." Resp. at 8. Both arguments fail. First, Caminiti cites no authority for the proposition that Women's Care waived this defense as to the Title VII or FCRA claim by "preemptively" filing suit for breach of the employment agreement. Caminiti had ample time to file a charge with either the EEOC or FCHR, and Women's Care properly raised Caminiti's failure to exhaust in its motion to dismiss. *See, e.g., Basel v. Sec'y of Def.*, 507 F. App'x 873, 874 (11th Cir. 2013) (per curiam) ("Exhaustion of administrative remedies is a matter . . . that should be raised in a motion to dismiss.").

Second, Women's Care's conduct does not entitle Caminiti to equitable tolling for the sex discrimination claims. To be sure, the timely filing of a "charge of discrimination with the EEOC is not a jurisdictional prerequisite," and so can be subject to equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Christian v. S. Co.*, No. 24-10762, 2025 WL 66722, at

---

2d at 497 (quoting *Angrand v. Fox*, 552 So.2d 1113, 1115–16 (Fla. 3d DCA 1989)). That is not the case here, where Caminiti has no right to sue if the FCHR "determines that there is not reasonable cause to believe that" the FCRA has been violated. § 760.11(7), Fla. Stat. (permitting only an administrative hearing in such case).

*3 (11th Cir. Jan. 10, 2025) (per curiam). But the party seeking equitable tolling must prove that she "diligently" pursued her rights and that some "extraordinary circumstance" stood in her way and prevented timely filing. *Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 255 (2016) (citation modified); *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993) (explaining that equitable "tolling is an extraordinary remedy" to be extended "sparingly"). Caminiti concedes that she was not "diligently" pursuing her FCRA claim, *see Menominee*, 577 U.S. at 255, noting that she "elected to simply move on with her medical practice and career, rather than become ensnarled in protected litigation, because [Women's Care] took no action for 10 months after the exchange of claims and positions," Resp. at 9. Women's Care's mere inaction is insufficient to toll Caminiti's filing deadline, and Caminiti's counterclaims for sex discrimination are dismissed.

### B. Count II: Fraud and Misrepresentation

Next, Women's Care asserts that Caminiti's counterclaim alleging fraud or misrepresentation fails to satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *See* MTD at 13–14. I agree.

To state a claim for fraudulent misrepresentation,[4] Caminiti must allege: "(1) a false statement concerning a material fact; (2) the representor's

---

[4] Although styled as a claim for "fraud/misrepresentation," Caminiti's theory resembles a fraudulent inducement claim. *See* Am. Countercls. ¶ 53 ("[Women's Care]

knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (per curiam) (citation modified). On top of these elements, Federal Rule of Civil Procedure 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." A fraud claim must detail: "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff, and; (4) what the defendant obtained as a consequence of the fraud." *In re Galectin Therapeutics, Inc. Secs. Litig.*, 843 F.3d 1257, 1269 (11th Cir. 2016). "[This] rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they

---

knowingly made these false representations to Dr. Caminiti for the specific purpose of inducing Dr. Caminiti to resign her current employment and accept the employment position with [Women's Care]."). Courts applying Florida law disagree about whether fraudulent misrepresentation and inducement are the same claim. *See NorthStar Reg'l P.S.C. v. InSync Healthcare Sols.*, LLC, No. 8:23-CV-02636-KKM-NHA, 2025 WL 1707205, at *4 n.4 (M.D. Fla. June 18, 2025) (collecting cases). Courts viewing them as distinct have concluded that fraudulent inducement requires a showing of *justifiable* reliance. *Id.* (citing *Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*, 842 So. 2d 204, 209 (Fla. 3d DCA 2003)). That disagreement is not immediately relevant here, as Caminiti's claim fails independently under Rule 9(b).

are charged." *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (citation modified).

Here, Caminiti alleges that Women's Care "falsely represented the terms and conditions of employment, in general, and [Women's Care's] office staffing, conditions, practices, and procedures, to induce Dr. Caminiti to resign her highly successful and lucrative medical practice after 18 years and join [Women's Care's] offices in Tampa, Florida." Am. Countercls. ¶ 52. That principal allegation is woefully inadequate to meet Rule 9(b)'s specificity demands. And although earlier portions of Caminiti's counterclaim shed light on the substance of Women's Care's purportedly false representations regarding its staffing and resources, *see id.* ¶¶ 5–7, 15, they too fail to allege "precisely what statements or omissions were made in which documents or oral representations," when such statements were made, or who made the statements on behalf of Women's Care, *see Galectin Therapeutics*, 843 F.3d at 1269; *Sampson v. Wash. Mut. Bank*, 453 F. App'x 863, 866 (11th Cir. Oct. 5, 2011) (per curiam) (holding that a complaint for fraud based on a bank allegedly misrepresenting property values on the mortgage market failed to meet Rule 9(b)'s requirement because the plaintiff failed to allege, among other things, who made the misrepresentations). Absent more specific allegations, Caminiti does not sufficiently allege a claim for fraud or misrepresentation. Her claim is therefore dismissed without prejudice.

12

### C. Count III: Breach of Contract

Next, Women's Care argues that Caminiti fails to allege a material breach of the Agreement, in part because she does not identify any written provisions obligating Women's Care to perform in the way she claims it did not. *See* MTD at 15–16. Caminiti responds that she sufficiently alleged a breach of at least two material terms, and that Women's Care also breached an implied covenant of good faith and fair dealing by hindering her from practicing medicine in step with "the professional duties that she owes to her patients." Resp. at 11–13.

To state a claim for breach of contract in Florida, a plaintiff must allege "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). Neither party here contests the existence of a valid contract, only the allegation of material breach. "To constitute a vital or material breach, a party's nonperformance must go to the essence of the contract." *MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 849 (11th Cir. 2013) (per curiam) (citation modified). "As a general rule, '[t]he issue of whether an alleged breach is vital or material is reviewed as a question of fact.'" *O'Donnell v. Lee*, 387 So. 3d 447, 453 (Fla. 1st DCA 2024) (quoting *Covelli Fam., L.P. v. ABG5, L.L.C.*, 977 So. 2d 749, 752 (Fla. 4th DCA 2008)); *see Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1300, 1309 (S.D. Fla. 2014)

13

(explaining that whether a breach is material "is generally not appropriate for resolution on a motion to dismiss" (citing *Ron Matusalem & Matusa of Fla., Inc. v. Ron Matusalem, Inc.*, 872 F.2d 1547, 1551 (11th Cir. 1989)).

The Employment Agreement provided that Caminiti's employment "shall commence on or about September 9, 2024." Agreement ¶ 10. Caminiti alleges that Women's Care was "completely unprepared" for her to start, and "unreasonably delayed the start of [her] employment for several weeks, in material breach of the contract, causing [her] to incur tens of thousands of dollars in damages, costs, and losses, including, but not limited to, a substantial loss of income resulting from the delays." Am. Countercls. ¶¶ 13, 58. Although Women's Care maintains that "Caminiti's start date was an estimated time frame, not a guarantee," MTD at 16, construing all inferences in Caminiti's favor, she fairly alleges that Women's Care's several week delay constituted a material breach. Likewise, notwithstanding Women's Care's averment that "it had to secure 'tail insurance' for Dr. Caminiti after she failed to secure it herself," MTD at 16 (citing Compl ¶¶ 21–24), I construe inferences in Caminiti's favor on review of this motion. She therefore adequately alleges that Women's Care materially breached because it failed to procure "tail" liability coverage for Caminiti despite her terminating the Agreement "with cause." *See* Agreement ¶ 8; Am. Countercls. ¶ 62.

14

Finally, to the extent that Caminiti argues (for the first time) that Women's Care breached the implied covenant of good faith and fair dealing by, among other things, failing to provide her adequate resources to responsibly practice OB/GYN medicine, *see* Resp. at 11–13; Am. Countercls. ¶¶ 59–61, I do not read her counterclaim to squarely level such an accusation. In any amended counterclaim, Caminiti should allege how the covenant "attaches to [Women's Care's] performance of a specific contractual obligation." *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005) (citing *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1097 (Fla. 1st DCA 1999)).

### D. Count IV: Equal Pay Act

An Equal Pay Act claim requires a plaintiff to plead that "an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Arrington v. Cobb County*, 139 F.3d 865, 876 (11th Cir. 1998), *as amended* (May 28, 1998) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)). "To establish a prima facie case, a plaintiff need only demonstrate that the jobs at issue are substantially similar; a plaintiff does not have to show that the skills or qualifications of the actual male and female employees holding the positions are also substantially equivalent." *Id.* In the comparator analysis, it is the "actual job content," not job titles or job descriptions that controls. *See id.*

15

Here, Caminiti alleges that she "was paid substantially less wages than comparably situated male OB/GYN physicians employed by [Women's Care] who had less experience and training, including, but not limited to, paying such male physicians an annual salary that was $60,000.00 more than Dr. Caminiti and other female OB/GYN physicians." Am. Countercls. ¶ 66; *see id.* ¶ 67 (alleging that male comparators received additional "PTO/vacation pay and related benefits"). Caminiti further alleges that she "performed equal work or, in many instances, more work, more call duty coverage, and more responsibilities than male OB/GYN physicians employed by [Women's Care], under identical (or worse) working conditions." *Id.* ¶ 68; *see id.* ¶ 27 (describing "male physicians with the exact same job duties and responsibilities").

According to Women's Care, these allegations are insufficient because Caminiti does not provide "any information regarding her job duties and responsibilities compared to those of her male coworkers," and merely relies on the fact that male colleagues "may have had the same title as OB/GYNs." MTD at 18. Although Caminiti avers that the duties are equivalent because, "[b]y definition, the actual job duties and responsibilities of OB/GYN physicians . . . is to provide obstetrics and gynecology medical care to [Women's Care] patients," Resp. at 14, she attempts to prove too much. The Equal Pay Act analysis looks at "actual job content," and although "job titles or descriptions may be considered," they are not dispositive. *Arrington*, 139 F.3d

16

at 875–76. While it stands to reason that OB/GYNs at Women's Care perform similar work, it is equally (if not more) reasonable to think that some physicians might perform certain procedures, while others do not, or that some physicians perform more procedures than others. In fact, Caminiti's compensation structure indicates that a physician's workload may vary—the Agreement entitles her to "an annual productivity bonus equal to 20% of the sum of net collections received by the Employer for professional services" performed by Caminiti, to the extent those collections exceed three times her base salary. *See* Agreement at 13. Caminiti does not explain how this bonus structure factors into any comparison between her and her male counterparts.

Caminiti's Equal Pay Act claim is therefore dismissed without prejudice. In any amended complaint, Caminiti should allege specific facts about her male comparators' job responsibilities, that those job responsibilities—and not just job titles—were substantially similar to her own, and that Women's Care paid the male physicians more for those same duties.

## IV.   CONCLUSION

Accordingly, the following is **ORDERED**:

1.   Counter Defendant Women's Care Florida's Motion to Dismiss (Doc. 25) is **GRANTED IN PART and DENIED IN PART.**

2.   Caminiti's claim for violation of Title VII in Count I of the Amended Counterclaim is **DISMISSED with prejudice**.

17

3. Caminiti's claims for violation of the FCRA in Count I, Fraud or Misrepresentation (Count II), and violation of the Equal Pay Act (Count IV) in the Amended Counterclaim are **DISMISSED without prejudice.**

4. Counter Plaintiff Caminiti may file amended counterclaims no later than **April 15, 2026**.

**ORDERED** in Tampa, Florida, April 1, 2026.


Kathryn Kimball Mizelle
United States District Judge

18